This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 171
The People &c.,
            Respondent,
        v.
Harvert Stephens, Also Known as
Havert Stephens,
            Appellant.


                Kristen McDermott, for appellant.
                James P. Maxwell, for respondent.
                John A. Sickinger, for amicus curiae City of Syracuse.


GARCIA, J.:

        This case calls upon us to determine the

constitutionality of Syracuse Noise Control Ordinance ("Syracuse

Noise Ordinance") section 40-16 (b) (sound reproduction), which

prohibits the creation of "unnecessary noise" emanating beyond 50

feet from a motor vehicle operated on a public highway.

Specifically, we are asked whether this section is

                        - 1 -

unconstitutional pursuant to our decision in People v New York Trap Rock Corp. (57 NY2d 371 [1982]). For the reasons stated below, we conclude that the statute does not "offend the constitutional void-for-vagueness doctrine of due process" (id. at 374)

Defendant was charged with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree and with sound reproduction in violation of the Syracuse City Ordinance section 40-16 (b). Defendant's vehicle was stopped by police officers who believed his car stereo was operating at a volume that could be heard more than 50 feet away in violation of section 40-16 (b). During that stop, the arresting officers discovered defendant was in possession of crack cocaine, some of which was in plain view.

Syracuse Noise Ordinance section 40-4 sets forth the "general prohibition" against "unnecessary noise," stating: "No person shall make, continue or cause or permit to be made any unnecessary noise." "Unnecessary noise" is defined in section 40-3 (u) as "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a reasonable person of normal sensibilities, or which causes injury to animal life or damage to property or business" [emphasis added]. This section includes eleven standards "to be considered in determining whether

unnecessary noise exists in a given situation" (id. § 40-3 [u]).

The Syracuse Noise Ordinance also contains 14 sections listing

acts that constitute prima facie evidence of a violation of the

ordinance (id. § 40-4).  Here, the indictment specifically

charged, and defendant was convicted of, one of these 14

enumerated acts:

> "No person shall operate, play or permit
> the operation or playing of any radio,
> television, phonograph, drum, musical
> instrument, sound amplifier or similar
> device which produces, reproduces or
> amplifies sound: . . .  (b) In such a
> manner as to create unnecessary noise at
> fifty (50) feet from such device, when
> operated in or on a motor vehicle on a
> public highway" (id. § 40-16 [b]).

Defendant moved to suppress the crack cocaine

discovered during the traffic stop.  At the suppression hearing,

two police officers testified that the music could be heard from

at least 100 feet away from defendant's vehicle.  At the

conclusion of the hearing, defendant moved to dismiss the count

charging a violation of section 40-16 (b), arguing that the

Syracuse Noise Ordinance was unconstitutional under the

void-for-vagueness doctrine.  He further argued that suppression

of the drugs seized as a result of the stop was required.

Supreme Court denied both the dismissal and suppression

motions.  Although the court determined the Syracuse Noise

Ordinance was arguably unconstitutional, Supreme Court concluded

"that the Appellate Division should make the determination as to

whether or not the ordinance passes constitutional muster."
Supreme Court further determined "there was sufficient proof of
probable cause to believe the defendant violated Section 40-16
(b) of the Syracuse Noise Ordinance, which prohibits
dissemination of 'unnecessary noise' beyond 50 feet of an
automobile, because there was testimony on this point that the
court has found credible."

At the subsequent bench trial, which was conducted on
stipulated proof, defendant was convicted as charged.

On appeal, the Appellate Division unanimously affirmed,
holding that the Syracuse Noise Ordinance was constitutional (128
AD3d 1497 [4th Dept 2015]).  The Appellate Division rejected
defendant's argument that the ordinance was unconstitutionally
vague, reasoning that while a similar local noise ordinance was
held to be void for vagueness in Trap Rock, the Syracuse Noise
Ordinance at issue "defines 'unnecessary noise' with reference to
an objective standard of reasonableness rather than a subjective
standard, and thus it is not unconstitutionally vague on that
ground" (id. at 1498, quoting Syracuse Noise Ordinance § 40-3
[u]).  The court further found that section 40-16 (b) was not
unconstitutionally vague because it was "tailored to a specific
context -- the creation of 'unnecessary noise' beyond 50 feet of
a motor vehicle on a public highway" (id. at 1498-1499).  A Judge
of this Court granted leave to appeal, and we now affirm.

Defendant has challenged the constitutionality of the

Syracuse Noise Ordinance both on its face and as applied.
However, when a "defendant makes an as-applied challenge and the
court repudiates it," as we do here, "the facial validity of the
statute is confirmed" because the court "necessarily concluded
that there is at least one person -- the defendant -- to whom the
statute may be applied constitutionally" (People v Stuart, 100
NY2d 412, 422-423 [2003]).

Municipal ordinances are afforded an "exceedingly
strong presumption of constitutionality" (Lighthouse Shores, Inc.
v Town of Islip, 41 NY2d 7, 11 [1976]; see also Brady v State, 80
NY2d 596, 602 [1992]) and should "be construed so as to avoid
constitutional issues if such a construction is fairly possible"
(FGL & L Prop. Corp. v City of Rye, 66 NY2d 111, 120 [1985]).  We
have further recognized that "noise regulation poses special
problems of draftsmanship and enforcement," as the "nature of
sound makes resort to broadly stated definitions and prohibitions
not only common but difficult to avoid" (Trap Rock, 57 NY2d at
379).

With these general principles in mind, we analyze this
vagueness challenge using a two-part test (Stuart, 100 NY2d at
420; People v Nelson, 69 NY2d 302, 307 [1987]; People v Smith, 44
NY2d 613, 618 [1978]).  First, we must determine "whether the
statute in question is sufficiently definite to give a person of
ordinary intelligence fair notice that his contemplated conduct
is forbidden" (Stuart, 100 NY2d at 420, citing Nelson, 69 NY2d at

307 [internal quotation marks omitted]; see also Smith, 44 NY2d at 618, quoting United States v Harriss, 347 US 612, 617 [1954]). Second, we must determine "whether the enactment provides officials with clear standards for enforcement" so as to avoid "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (Stuart, 100 NY2d at 420-421, quoting Grayned v City of Rockford, 408 US 104, 108-109 [1972]; Nelson, 69 NY2d at 307). Accordingly, a statute is "unconstitutionally vague under the Due Process Clauses of the Federal and State Constitutions [where] it fails to give fair notice to the ordinary citizen that the prohibited conduct is illegal, [and] it lacks minimal legislative guidelines, thereby permitting arbitrary enforcement" (People v Bright, 71 NY2d 376, 379 [1988]). On the other hand, "[a] statute which employs terms having an accepted meaning long recognized in law and life cannot be said to be so vague and indefinite as to afford the defendant insufficient notice of what is prohibited or inadequate guidelines for adjudication, even though there may be an element of degree in the definition as to which estimates might differ" (People v Cruz, 48 NY2d 419, 428 [1979] [internal quotation marks and citations omitted]).

Contrary to defendant's claim, the Syracuse Noise Ordinance challenged here does not suffer from the same constitutional infirmities as the Poughkeepsie Noise Ordinance (Unnecessary Noise Control Ordinance of the Town of Poughkeepsie,

adopted July 13, 1977) challenged in Trap Rock.  The Poughkeepsie

Noise Ordinance contained a general provision prohibiting a

person from making "any unnecessary noise," defined as "any

excessive or unusually loud sound or any sound which either

annoys, disturbs, injures or endangers the comfort, repose,

health peace or safety of a person" (Trap Rock, 57 NY2d at 375

[emphasis added]).  That statute listed ten non-exclusive

standards to be considered in determining whether "unnecessary

noise" existed in a given situation (id. at 375-376).  The

Poughkeepsie Noise Ordinance then listed 17 acts which would

violate the law if they created unnecessary noise; notably,

however, violation of any one of those 17 subdivisions would also

constitute a violation of the general provision against making

"any unnecessary noise" (id. at 376).  The defendant in Trap Rock

was convicted of violating one of the specific subdivisions as

well as the general provision based upon the same conduct.

In Trap Rock, we turned first to the specific

subdivision defendant had been found to violate -- the making of

unnecessary noise within 300 feet of the boundary line of a

residential district -- and noted that it was unreasonably

expanded by the phrase "without limiting the above language" (id.

at 380).  In effect, the Trap Rock defendant was convicted of

violating that specific provision even though the commercial

loading activity at issue took place 2,400 feet from any

residential boundary (id.).  We found "still more egregious" the

fact that the identical conduct also resulted in conviction under the blanket provision against making "any unnecessary noise" -- a section "permeated with vagueness" (id.).  We found that the subjective definition of "unnecessary noise" in that provision -- "any excessive or unusually loud sound or any sound which . . . annoys . . . a person" -- could result in convictions based solely on the malice or animosity of a cantankerous neighbor (id.).  The ten specific standards that were articulated did not save the statute, as the standards were themselves vague and non-exclusive (id. at 381).  As a result, we held that the pervasive nature of the statute's catchall effect made the ordinance a ready candidate for *ad hoc* enforcement and that, accordingly, the Poughkeepsie Noise Ordinance was unconstitutional (id.).

The crucial difference here is that the Syracuse Noise Ordinance defines "unnecessary noise" based on an objective standard -- specifically, "a reasonable person of normal sensibilities" (Syracuse Noise Ordinance § 40-3 [u]).  As we concluded in People v Bakolas (59 NY2d 51 [1983]), decided less than a year after Trap Rock, the "term 'unreasonable noise' is not incapable of definition.  Rather, it describes a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate" (id. at 53).  The Bakolas Court distinguished Trap Rock, finding that an objective standard prevents arbitrary and discriminatory "enforcement according to the 'malice or

animosity of a cantankerous neighbor' or the 'boiling point of a particular person'" (Bakolas, 59 NY2d at 54, quoting Trap Rock, 57 NY2d at 380).

Additionally, unlike the Poughkeepsie Noise Ordinance, Syracuse Noise Ordinance section 40-16 (b) is "tailored to a specific context" -- limiting the prohibition to creating "unnecessary noise" by playing a radio or similar device that can be heard at least 50 feet away when being operated in a motor vehicle on a public highway.  We recognized in Trap Rock that "antinoise cases" have upheld noise regulations that apply within limited contexts and convey "an accepted meaning" (Cruz, 48 NY2d at 428) to such otherwise imprecise words as "loud" or "excessive" (Trap Rock, 57 NY2d at 379, quoting People v Byron, 17 NY2d 64, 67 [1966]).  For example, in People v Byron, we upheld a motor vehicle statute that mandated that "[e]very motor vehicle, operated or driven upon the highways of the state, shall at all times be equipped with an adequate muffler . . . to prevent any excessive or unusual noise . . ." (id. at 66).  This Court concluded "[w]hat is unusual noise in the operation of a car has become common knowledge and anything in excess of that is excessive or unusual and any ordinary motorist should have no difficulty in ascertaining whether or not excessive or unusual noise accompanied the operation of his vehicle" (id. at 67).  We agree with the Appellate Division's conclusion below that "'[w]hat is usual noise in the operation of a car [radio or other

sound production device] has become common knowledge . . . and
any ordinary motorist should have no difficulty in ascertaining'
whether the noise in question violates the applicable standard"
(128 AD3d at 1499, quoting Byron, 17 NY2d at 67).

Accordingly, Syracuse Noise Ordinance section 40-16 (b)
is sufficiently definite to put a person on notice that playing
music which can be heard over 50 feet from such person's car on a
public road, in a manner that would annoy or disturb "a
reasonable person of normal sensibilities" is forbidden conduct
and the objective standard affords police sufficiently "clear
standards [for] enforcement" (Stuart, 100 NY2d at 420).
Moreover, unlike the Poughkeepsie Noise Ordinance at issue in
Trap Rock, section 40-16 does not contain any "without limiting
the above language" clause that would make it possible to convict
defendant of violating section 40-16 (b) for creating unnecessary
noise that could be heard at distances less than 50 feet from his
vehicle.

For the reasons set forth above, we hold that the
Syracuse Noise Ordinance is constitutional.[1]  We have considered
defendant's remaining contentions on appeal and conclude they are
without merit.  Accordingly, the Appellate Division order should

---

[1] Our conclusion is in line with federal courts which have
considered the Syracuse Noise Ordinance and other similar laws
that incorporate an objective standard (see Marcavage v Syracuse
Police Dept., 515 Fed Appx 14 [2d Cir 2013]; Howard Opera House
Assocs. v Urban Outfitters, Inc., 322 F3d 125, 128 [2d Cir
2003]).

be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Garcia.  Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided November 21, 2016